UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARCHINA W. WILLIAMS,

        Plaintiff,

v.

FAIRWAY MARKET,

        Defendant.

Civ. No. 14-3098 (WJM)

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

    Plaintiff Marchina Williams ("Williams"), *pro se*, brings this action alleging retaliation and a hostile work environment based on race discrimination by the Defendant Fairway Paramus LLC (plead as "Fairway Market" and referred to in this opinion as "Fairway").  This matter comes before the Court on Fairway's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").  The motion is decided without oral argument.  Fed. R. Civ. P. 78.  For the reasons set forth below, Fairway's motion is **GRANTED** and judgment is entered in its favor.

**I.    BACKGROUND**

    Plaintiff Williams has been an employee at Defendant Fairway since March 2009.  (Certification of Erica Peterson Supp. Fairway Paramus' Mot. Summ. J. ("Peterson Cert.") ¶ 16.)  Plaintiff's instant action arises out of a complaint she filed with the Equal Employment Opportunity Commission ("EEOC") in November 2013.  (Certification of Adam K. Phelps Supp. Fairway Paramus' Mot. Summ. J. ("Phelps Cert.") Ex. G.)  Plaintiff alleged in this complaint that her discharge in August 2013 and demotion after reinstatement was due to her complaints regarding harassment and discipline.  (*Id.*)

    In August 2013 Williams had a verbal altercation with the office manager and a supervisor at Fairway.  (*See* Peterson Cert. ¶ 20.)  While the altercation was being investigated, Williams sent an email to the general manager of the store alleging that she heard the office manager and another employee (Sharon Serelis)

complaining about employees and making racially charged comments. (*See id.* Ex. F.) An investigation by Fairway of these subsequent allegations revealed insufficient evidence. (*See id.* ¶ 24.) After these two incidents, Williams and Serelis had an altercation, which spilled over into the Fairway parking lot and resulted in Serelis filing a police report. As a result of this altercation, both employees were suspended by the general manager pending an investigation. (*See* Peterson Cert. ¶ 26-27; Pl.'s Br. Opp. Mot. Summ. J. ("Pl. Br.") 6.) In an attempt to settle the issue, the Human Resources department at Fairway met with Williams, Serelis, and their union to negotiate a resolution. Fairway offered to reinstate both employees, but required that they be transferred to other positions (which Fairway characterizes as a lateral move) in order to avoid any future issues. Williams rejected this offer and was terminated. According to Fairway, a week later, Williams reconsidered her decision and requested to be reinstated as a Cashier. Fairway agreed and Williams resumed working at Fairway on or about September 11, 2013. (*See* Peterson Cert. ¶ 33-38.)

The EEOC issued a finding as to these circumstances on January 11, 2014, noting that it was unable to establish a violation "with respect to [Williams'] allegations that she was discriminated against"—a no-cause determination. (Phelps Cert. Ex. G.) Williams was also informed of her right to sue, which she was required to undertake within ninety-days from receipt of the notice. (*Id.*)

After her receipt of EEOC's determination and prior to her second complaint with the EEOC, Williams was written up for attendance issues and register shortages. These write-ups for register shortages occurred on January 18, February 28, and March 2, 2014. (*See* Peterson Cert. ¶ 65.) Williams was suspended for one day after the February 28, 2014, offense and suspended for four days following her March 2, 2014, offense. (*Id.*) Additionally, Williams called out eight times during January and February 2014. (*See id.* ¶ 57.) As a result, she was issued a written warning on February 26, 2014, and informed that her next call out would lead to suspension. (*See id.*) When Williams called out again on April 11, 2014, she was suspended for six days. (*See id.* ¶ 59.) In the interim, Williams filed her second EEOC complaint on April 3, 2014. (Phelps Cert. Ex. F.) Her sole allegation in this complaint was that her reassignment to the night shift was in retaliation for filing the November 2013 EEOC complaint. (*See id.*) On April 21, 2014, the EEOC issued a second no-cause determination and once again informed Williams of her ninety-day right to sue. (Phelps Cert. Ex. H.)

Williams filed the instant action a little less than a month later, on May 14, 2014. In her complaint, she alleges that Fairway engaged in discrimination and retaliation against her in violation of Title VII. Williams asserts specific acts of retaliation as a result of her filing a discrimination complaint with the EEOC, namely (i) her shift change in January 2014; (ii) her discipline for register shortages in February/March 2014; and (iii) her suspension for attendance issues in April 2014.[1] Williams also alleges that Fairway created a hostile work environment for African American employees in order to hinder their advancement in the company. After conducting discovery, during which Williams filed a number of motions to compel either interrogatories or production of documents, Fairway filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010). On a summary judgment motion, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. A factual dispute is genuine if "a reasonable jury could return a verdict for the non-moving party," and is material if it could affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). If the non-moving party fails to demonstrate beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III. DISCUSSION

### A.     Motion to Compel

---

[1] In the amended complaint, Williams also discusses her alleged demotion to cashier, which was part of her November 2013 EEOC complaint.

3

Prior to tackling Fairway's summary judgment motion, the Court must consider Plaintiff's request to dismiss the instant motion without prejudice pursuant to FRCP 56(d).[2] Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The Third Circuit has interpreted the rule as requiring that "a party seeking further discovery in response to a summary judgment motion [must] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 140-41 (3d Cir. 1988). Accordingly, "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course" if the party opposing summary judgment meets the requirements laid down by the Third Circuit. *Atl. Deli & Grocery v. United States*, No. 10–4363, 2011 WL 2038758, at *3 (D.N.J. May 23, 2011).

On July 10, 2015, Williams submitted a letter to the Court asking that the instant motion be denied for Fairway's failure to provide supplemental answers to Plaintiff's interrogatories and Fairway's request for discovery of Williams' medical records. (Docket No. 54.) The Court is mindful that procedural rules may be relaxed for a *pro se* litigant and, consequently, the Court will not hold Williams' failure to file an affidavit or declaration against her, but will rather consider her letter to the Court as her Rule 56(d) application. *See Abulkhair v. Citibank & Associates*, 434 F. App'x 58, 62 (3d Cir. 2011) (considering *pro se* litigant's Rule 56(d) application even though he did not file an affidavit in accordance with the Rule). While Williams' letter does identify the information sought, she fails to address how this discovery would help her oppose—let alone preclude—Fairway's summary judgment motion. *See Dowling*, 855 F.2d at 140. Williams' vague and general statements that she "cannot . . . present facts essential to justify [her] opposition" and that "there are genuine issues as to material facts" fail to fulfill the

---

[2] Though Williams' letter states that she seeks relief under FRCP 56(c) and (f), her request and the reasons she provides suggests that she intends to seek dismissal of Fairway's summary judgment motion under FRCP 56(d).

specificity required by Rule 56(d). *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987). In addition, it appears that Williams' request for additional information was pursued after the close of discovery. (*See* Docket No. 45.) However, Williams does not provide a reason why the request was made at such a late stage. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 09–69125, 2011 WL 1539883, at *2 (E.D. Pa. Feb. 22, 2011) ("A request for a continuance to conduct additional discovery pursuant to Fed. R. Civ. P. 56(d) should be denied where, *inter alia*, movants 'had ample time and opportunity to conduct discovery, but failed to do so.'"). Therefore, the Court denies Williams' request to dismiss Fairway's motion for summary judgment.

### B. Legally Barred Claims

Fairway contends that some of Williams' allegations are barred as she either (a) failed to timely file suit or (b) did not exhaust her administrative remedies prior to filing the instant action.

#### i. Time-Barred Claims

Williams' claim regarding the August 11, 2013, incident and her subsequent demotion to cashier are time-barred. Williams filed her EEOC complaint on November 6, 2013. Subsequently, the EEOC issued a no-cause determination and a right-to-sue letter, which Williams received on January 11, 2014. The right-to-sue letter informed Williams that she must file suit within ninety days of her receipt of the letter. (*See* Phelps Cert. Ex. G.) Plaintiff filed the instant action on May 14, 2014, a little over a month after the deadline for her to bring suit. The Third Circuit has stated that "the ninety-day limit in which a plaintiff must file a Title VII action is akin to a statute of limitations." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999). Consequently, unless a plaintiff can demonstrate an equitable basis on which to toll this time period, the Court must dismiss the untimely claim. *Id.* In her deposition, Williams admitted that she received notice of her right to file suit and the ninety-day time limit, and that the instant action was filed more than ninety days after receipt of the letter. (*See* Phelps Cert. Ex. D ("Pl. Dep.") 103:2-11.) Accordingly, Williams does not tackle this issue in her opposition brief. Finding no basis to equitably toll the ninety-day period, the Court finds Williams' claim regarding the August 2013 incident as time-barred.

### ii. Failure to Exhaust Administrative Remedies

Additionally, Fairway argues that any claims in the Complaint aside from the alleged retaliation in January 2014 are barred due to Williams' failure to raise these acts of discipline to the EEOC. In particular, Fairway points to Williams' allegations regarding: (i) the discipline she received for the register shortages in February/March 2014; and (ii) her discipline for excessive absences in April 2014. Though Williams discusses these incidents in her brief, she does not specifically address Fairway's exhaustion argument.

A plaintiff is required to raise all Title VII claims with the EEOC prior to bringing an action in federal court. *Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009). This requirement is necessary "to put the EEOC on notice of the claims," affording "it the opportunity to settle disputes" so as to avoid "unnecessary action in court," and the Third Circuit has held that a plaintiff "is not permitted to bypass [this] administrative process." *Id.* (quotations omitted). Thus, the issue before the Court is whether Williams was required to raise each incident of retaliation before the EEOC, as the Title VII action that a plaintiff can bring in federal court is "defined by the scope of the EEOC investigation." *Ostapowicz v. Johnson Bronze Co.*, 541 F.3d 394, 398-99 (3d Cir. 1976).

Each discrete act of discrimination must be raised with the EEOC, as they constitute a separate actionable "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (stating that actions that are easy to identify, such as termination, failure to promote, denial of transfer, or refusal to hire, constitute discrete acts); *see also Waiters v. Aviles*, 418 F. App'x 68, 71 (3d Cir. 2011) (noting that an allegation of wrongful discipline is a discrete act). Analyzing the two instances raised by Fairway, the discipline for register shortages occurred prior to Williams filing her charge with the EEOC on April 2, 2014. (*See* Phelps Cert. Ex. F.) However, Williams did not raise this issue in her charge and is, consequently, barred from seeking judicial review of an allegation that the EEOC had the opportunity to investigate. *See, e.g., Harman v. York City Sch. Dist.*, No. 1:12-CV-02033, 2013 WL 3242407, at *5 (M.D. Pa. June 25, 2013) (dismissing claims for failure to exhaust where plaintiff had the opportunity to include discriminatory acts that occurred before plaintiff filed his EEOC charge, but failed to do so.)

The discipline for excessive absences occurred on April 11, 2014, after Williams had filed her second EEOC charge. The Third Circuit has held that

6

"[w]here discriminatory actions continue after the filing of an EEOC complaint" a victim is not required "to file additional EEOC complaints" so long as "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). If this is the case, a plaintiff can be said to have exhausted her administrative remedies as to the later discriminatory actions. *Id.* (finding that where the core grievance—retaliation—was the same in the EEOC charge and the complaint, though based on different factual circumstances, plaintiff had exhausted the necessary administrative remedies.) Williams' second EEOC charge was based on an allegation of retaliation. As such, the Court finds that Williams' claim of retaliation for excessive absences can reasonably be expected to grow out of this charge.

Consequently, the Court finds that, while Williams is barred from raising the register shortages discipline in the instant action, she exhausted her administrative remedies as to the excessive absences discipline and the Court will consider its merits.

**C.    Retaliation Claim**

Under Title VII, in the absence of direct evidence of retaliation, discrimination claims based on circumstantial evidence are determined under the McDonnell Douglas burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). While plaintiff carries the initial burden of establishing a *prima facie* claim, the defendant may rebut the claim by showing some legitimate, non-discriminatory reason for the adverse action. *Id.* If such a showing is made, plaintiff must then articulate how defendant's legitimate reason was in actuality a pretext for discrimination. *Id.* "A *prima facie* case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). Causation is demonstrated by establishing that the "desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521 (2013).

Fairway argues that Williams fails to set forth a *prima facie* case of retaliation. Williams' filing of an EEOC charge in November 2013 constitutes a

protected activity. *See Abraham v. William Paterson Coll.*, 260 F.3d 265, 287–88 (3d Cir. 2001) (stating that filing charges of discrimination or making complaints about discriminatory employment practices is a protected activity.) Moreover, a jury could conclude that Williams' schedule change was a materially adverse employment action. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) ("Assigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions.")

However, Williams fails to demonstrate a causal link between her formal complaint in November 2013 and her shift change in January 2014 or the disciplinary action in April 2014. Courts recognize a causal inference where there is temporal proximity between the protected activity and the adverse employment action or if there was a pattern of antagonism following the protected conduct. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). For "mere temporal proximity" to suggest such causality "the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Third Circuit has noted that "[t]he adverse action must occur within days, not months, of the protected activity." *Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2015).

Here, approximately two months passed between Williams' formal complaint and the alleged retaliatory shift change—a span of time too distant to establish a causal link by itself. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that a span of two months between the protected activity and the adverse employment action was not enough to find a causal link). As for the suspension due to excessive absences in April 2014, that took place almost five months after the EEOC charge and Williams' argument that the EEOC's determination coupled with her original charge was the basis of this retaliation is unpersuasive, since the EEOC found no discriminatory conduct on the part of Fairway. (*See* Phelps Cert. Ex. H.) Furthermore, Williams has not bolstered her causation argument by presenting additional evidence in conjunction with her timing argument or demonstrating a pattern of antagonism following her EEOC charge. *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014). In her opposition brief, Williams argues that she had a bullseye of sorts on her back following her EEOC charge. In support, Williams discusses a number of write-ups that she received in early 2014, including for register shortages and restroom breaks, and puts forth a handful of emails which she argues demonstrate antagonism towards her.

8

For the Court to find a causal relationship, Williams needs to establish that her EEOC charge was the but-for causation underlying these actions. *See Nassar*, 133 S. Ct. at 2528. In her deposition, Williams admitted to the underlying activity that resulted in these write-ups, including as to her attendance issues and that her register was short on the relevant dates. (Pl. Dep. 262:13-25, 441:19-22, 448:5-13.) In addition, though Williams contends that other employees were treated more favorably than her, she does not put forth any evidence to support her assertion in order to defeat Fairway's summary judgment motion. Based on the record, the Court finds that Williams has not shown—sufficient to raise a genuine issue of material fact—that Fairway's disciplinary actions were due to Williams' EEOC charge, and not in response to her violation of policies.

Lastly, Williams puts forth a number of emails from Fairway employees to demonstrate an animosity towards her. However, these emails (sent months after the protected activity and the alleged retaliation) do not expose a retaliatory animus against Williams on the basis of either her EEOC charge or her filing of the instant action, but rather reveal Williams' own disruptive behavior, including her interviewing co-workers and recording conversations with them while at work. Accordingly, Williams fails to prove the necessary causation to establish a *prima facie* case of retaliation.[3]

Therefore, the Court finds that summary judgment is warranted in Fairway's favor on this claim.

### D. Hostile Work Environment Claim

The Third Circuit has held that to establish a hostile work environment claim against an employer, a plaintiff must prove that (1) the employee suffered intentional discrimination because of her race, (2) the discrimination was severe and pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) the existence of employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). In assessing such claims, courts should "consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically

---

[3] Even if the Court were to find causation and that Williams has made a *prima facie* case of retaliation, Fairway has articulated legitimate non-retaliatory reasons for her January 2014 shift change and April 2014 suspension. For the same reasons that she cannot establish a *prima facie* case, Williams is unable to demonstrate that the adverse actions were merely a pre-text for retaliation.

9

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (quotations omitted). The U.S. Supreme Court has noted that Title VII is not a "general civility code," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and the Third Circuit has stated that Title VII does not protect against "offhand comments and isolated incidents," *Carver v. City of Trenton*, 420 F.3d 262–63 (3d Cir. 2005). As such, "the conduct must be extreme to amount to a change in the terms and conditions of employment." *Carver*, 420 F.3d at 262.

At the outset, the Court notes that "[s]peculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Paradoa v. Philadelphia Hous. Auth.*, 2015 WL 1923654, at *3 (3d Cir. Apr. 29, 2015) (quotation marks omitted). The crux of Williams' claim is that African American employees, including her, are issued unwarranted write-ups. This is used to create a hostile work environment and hinder advancement of African American employees. In addition, Williams argues that Hispanic employees receive preferential treatment at Fairway.

The Court is unable to find, based on the evidence proffered by Williams, that Fairway's environment is "objectively hostile, not just hostile in the plaintiff's view." [4] *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). The Court recognizes that a hostile work environment analysis "'must concentrate not on individual incidents, but on the overall scenario' because it is often difficult to determine the motivation behind allegedly discriminatory actions." *Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 355 (M.D. Pa. 2012). In lieu of any direct factual support demonstrating a non-neutral, racial motivation underlying her write-ups, Williams points to a Hispanic Fairway employee as having received preferential treatment for her attendance issues. However, it appears that the same employee was written-up in a manner similar to Williams and was later terminated for these attendance issues. (Peterson Cert. Ex. BB.) This is contrary to Williams' assertion that the employee "quit." (Pl. Br. 17.) As part of its papers, Fairway also produces evidence that they have suspended or terminated a number of non-

---

[4] While "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment," Plaintiff could produce the individuals from her recordings as witnesses should the matter proceed to trial. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). This would satisfy Fairway's authentication and hearsay arguments. The Court will thus consider these statements for the purposes of the instant motion.

African American female employees for attendance issues during 2013 and 2014. Similarly, Fairway has suspended or terminated "two Hispanic female employees and a White male employee for register shortages." (Def.'s Br. Further Supp. Mot. Summ. J. ("Def. Reply") 15.) Lastly, as the Court found above in regards to the retaliation claim, the emails Williams attaches to her opposition papers do not support a hostile work environment claim—instead demonstrating Fairway's employees' views that she was a difficult co-worker and, therefore, attempting to avoid her disruptive behavior. The Court does not find from these facts that Williams was treated to severe or pervasive racial discrimination.

As to the advancement argument, Williams states without factual support that there has "never been an African American promoted or hired as a supervisor." (Pl. Br. 11.) However, Fairway rebuts this statement by noting that "[t]here are currently [three] African American employees in managerial/supervisory positions at Fairway Paramus" and "[s]ince its opening in March 2009, eleven African American employees have held managerial positions." (Def.'s Br. Supp. Mot. Summ. J. ("Def. Br.") 38.) Moreover, just as Williams does not provide any evidence that African Americans are on the receiving end of "unwarranted write-ups," she does not put forth competent evidence that these write-ups are used to stymie advancement at Fairway.

Viewed cumulatively, based on the facts on record and even providing Williams the benefit of all reasonable inferences, the Court finds that Williams has failed to come forward with sufficient evidence to raise a genuine issue of material fact regarding whether Fairway subjected her to a hostile work environment. Therefore, the Court grants Fairway summary judgment.

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS** Fairway's motion for summary judgment and enters judgment in favor of the Defendant. An appropriate order follows.

                                                  /s/ William J. Martini
                                           **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 18, 2016**